IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **OPP DEVELOPMENT, INC.,** | **CASE NO. 1:21-CV-01216-PAB** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **METRASENS, INC.,** | |
| **Defendant.** | **MEMORANDUM OPINION AND ORDER** |

This matter comes before the Court upon Defendant Metrasens, Inc.'s Motion to Dismiss Count Six for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Plaintiff Kopp Development, Inc. filed an Opposition on September 7, 2021, to which Metrasens replied on September 21, 2021. (Doc. Nos. 16, 18.) For the following reasons, Metrasens' Motion is GRANTED.

**I.      Background**

Kopp and Metrasens are each engaged in the ferromagnetic detector business. (Doc. No. 1, ¶¶ 8, 9.) On June 21, 2021, Kopp filed the instant Complaint against its competitor Metrasens, asserting six claims for relief. (*Id.* at ¶¶ 9, 37-71.) In Claims One through Four, Kopp alleges that Metrasens engaged in certain misdeeds related to alleged misrepresentations of Kopp's products to potential buyers. (*Id.*, ¶¶ 8-30, 37-58.) In Claim Five, Kopp asserts that Metrasens infringed on Kopp's '128 Patent. (*Id.* at ¶¶ 59-65.) In Claim Six, Declaratory Judgment of Noninfringement, Kopp alleges that Metrasens "has accused Kopp Development of infringing one or more of its Patents." (*Id.* at ¶ 67.) According to Kopp, on October 29, 2020, "Simon Goodyear of Metrasens stated that Metrasens has a number of patents that could be asserted against Kopp Development."

(*Id.* at ¶ 32.) Kopp "denies any infringement, whether direct or indirect, literal or by equivalents, of any valid and enforceable claim of the any [*sic*] Patent" and alleges that an "actual and justiciable controversy exists as to whether the Defendant's Patents are infringed by Kopp Development." (*Id.* at ¶¶ 68, 69.) Kopp alleges that "[a] judicial declaration is necessary and appropriate to ascertain Kopp Development's rights, duties, and obligations with regard to the Defendant's Patents" and requests a declaratory judgment of noninfringement of any valid and enforceable claims of Metrasens' patents. (*Id.* at ¶¶ 70, 71.)

On August 26, 2021, Metrasens moved to dismiss Claim Six, Declaratory Judgment of Noninfringement, pursuant to Fed. R. Civ. P. 12(b)(1). (Doc. No. 12.) Kopp filed an Opposition on September 7, 2021, to which Metrasens replied on September 21, 2021. (Doc. Nos. 16, 18.) Thus, Metrasens' Motion to Dismiss is now ripe for a decision.

**II.     Standard of Review**

Metrasens moves to dismiss Kopp's Claim Six for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County,* 847 F.3d 812, 816-17 (6th Cir. 2017). A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[] the allegations in the complaint as true." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387

(6th Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME*, Local 11, 397 F. Supp. 3d 1076, 1081-82 (S.D. Ohio 2019).

By contrast, a factual attack "raises a factual controversy requiring the district court 'to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church,* 847 F.3d at 817 (quoting *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330). The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). The court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

**III. Analysis**

As an initial matter, the Court addresses the proper standard of review for Metrasens' Motion. As noted above, the standard of review of a 12(b)(1) motion depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church,* 847 F.3d at 816-17. Specifically, whether the Court construes Metrasens' Motion as raising a facial or factual attack determines whether the Court may consider evidence outside the pleadings in ruling on the Motion. *See Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. Metrasens does not indicate whether it is raising a facial or factual challenge under Rule 12(b)(1).[1] For the following reasons, the Court construes Metrasens' Motion as raising a facial challenge to subject matter jurisdiction. First, Metrasens' Motion and Reply contain language purporting to challenge the legal sufficiency of Kopp's jurisdictional allegations. (*See* Doc. No. Doc. No. 12, PageID# 67; Doc. No. 18, PageID# 118, 125.) Second, Metrasens does not challenge the factual accuracy of Kopp's allegation that, on October 29,

---

[1] Indeed, Metrasens does not address the Fed. R. Civ. P. 12(b)(1) standard at all.

2020, Metrasens' CEO told Kopp via email that "Metrasens has a number of patents that could be asserted against Kopp Development." (Doc. No. 18, PageID# 124.) Rather, Metrasens argues that this stray remark, without more, is insufficient to create an immediate case or controversy over which this Court may exercise subject matter jurisdiction. (*Id.*) Metrasens also did not introduce any extrinsic evidence to attack Kopp's factual allegations, which also suggests that it meant to raise a facial attack. *See, e.g., MSP Recovery Claims, Series LLC v. Grange Ins. Co.*, No. 5:19-cv-00219, 2019 WL 6770729, at *7 (N.D. Ohio Dec. 12, 2019). In its Reply, Metrasens argues that Kopp "introduced evidence outside of the pleadings to try to substantiate its claim that an actual controversy exists as to whether Kopp infringe[d] Metrasens' patents," further suggesting that Metrasens intended its 12(b)(1) Motion to be construed as raising a facial attack. (*Id.* at PageID# 118.) Thus, the Court construes Metrasens' Motion as a facial, rather than factual, attack on subject matter jurisdiction.[2]

The Court will turn now to the merits of Metrasens' Motion. Metrasens argues that the Court lacks subject matter jurisdiction over Kopp's declaratory judgment claim because Kopp failed to establish the existence of an actual case or controversy between the parties regarding Kopp's possible infringement of Metrasens' patent(s). (Doc. No. 12, PageID# 65.) Metrasens argues that Kopp fails to identify any specific Metrasens patent that Kopp was accused of infringing, or any Kopp product that might infringe on any Metrasens patent(s). (*Id.* at PageID# 68.) Instead, according to Metrasens, Kopp relies on one, single factual allegation, that on October 29, 2020, Metrasens' CEO Simon Goodyear informed Kopp that Metrasens had patents "it could assert against Kopp," to support Kopp's assertion that an actual controversy exists between the parties. (*Id.* at PageID# 69.)

---

[2] Even if the Court construed Metrasens' Motion as raising a factual attack, and therefore considered Kopp's November 2020 and April 2021 emails, the Court would still conclude, as set forth below, that it lacks subject matter jurisdiction over Kopp's declaratory judgment claim.

4

Metrasens argues that this sole allegation is insufficient to satisfy Kopp's burden of establishing an actual case or controversy. (*Id.*)

In its Opposition, Kopp argues that three emails from Goodyear to Kopp, including the October 29, 2020 email identified in its Complaint, as well as two other emails dated November 25, 2020 and April 9, 2021, which were not identified in its Complaint, demonstrate that Metrasens repeatedly "threatened patent infringement" litigation to gain an advantage in negotiations with Kopp. (Doc. No. 16, PageID# 101.) Kopp argues that these direct communications between the parties demonstrate that a justiciable case and controversy exists, and that Kopp should be permitted to proceed with its declaratory judgment claim against Metrasens. (*Id.* at PageID# 102.)

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The Declaratory Judgment Act is not an independent basis for subject matter jurisdiction, but instead provides a remedy if a court already has jurisdiction. *See Prasco, LLC v. Medics Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008). A federal court's jurisdiction under the Declaratory Judgment Act is limited by Article III of the Constitution, "which provides for federal jurisdiction over only 'cases and controversies.'" *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007); U.S. Const. art. III. The party seeking the declaratory judgment bears the burden of proving facts supporting the court's jurisdiction at the time the complaint was filed, and throughout the pendency of the case. *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

Federal courts have jurisdiction only if the "facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2009). In patent cases, the Article III case or controversy requirement "may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp*, 480 F.3d at 1381. The dispute "must be definite and concrete, touching the legal relations having adverse legal interests" and "be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune Inc.*, 549 U.S. at 127 (citation omitted).

"In the context of conduct prior to the existence of a license, declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement without some affirmative act by the patentee." *SanDisk Corp.*, 480 F.3d at 1380-81. Affirmative acts giving rise to jurisdiction are not limited to a patentee's explicit assertion of right. *Hewlett Packard v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009). Rather, the case or controversy requirement can also be satisfied by "conduct that can be reasonably inferred as demonstrating intent to enforce a patent . . . ." *Id.* The question of whether conduct may be reasonably inferred as demonstrating such an intent is objective; the declaratory judgment plaintiff's subjective belief is "irrelevant." *Id.* at 1363.

There are several types of cases in which courts have concluded that declaratory judgment exists in the patent infringement context. For example, declaratory judgment jurisdiction is supported

6

when a patent-holder publicly touts a patent enforcement strategy comprised of aggressive licensing and litigation. *See, e.g., Micron Tech. Inc. v. Mosaid Tech. Inc.*, 518 F.3d 897 (Fed. Cir. 2008) (subject matter jurisdiction existed over the plaintiff's declaratory judgment action where the defendant-patentee "pursue[d] a systematic licensing and litigation strategy" and issued public statements and annual reports emphasizing same).

Courts have also found declaratory judgment jurisdiction when a patentee manifests an intent to enforce its patent rights through a consistently litigious history, particularly when directed towards competitors and related to same or similar technology. *See, e.g, Hewlett Packard*, 587 F.3d at 1364 (concluding that "[a] history, or the lack thereof, of litigating in the industry can certainly be a factor to be considered"), citing *Prasco*, 537 F.3d at 1341.

Additionally, courts have found that a real, immediate, and substantial controversy can arise when a patentee makes inflexible and unacceptable licensing demands to enforce its patents. *See, e.g., SanDisk*, 480 F.3d at 1382 (concluding that the plaintiff established an Article III case or controversy where the defendant-patentee presented, as part of license "negotiations," a "thorough infringement analysis presented by seasoned litigation experts" that identified, "on an element-by-element basis, the manner in which" the defendant-patentee believed the plaintiff had infringed on its patents).

An actual case or controversy can also arise even where the defendant-patentee attempts to avoid declaratory judgment jurisdiction by avoiding using words like "litigation" and "enforcement." *See, e.g., Sun Style Intern., LLC v. Sunless, Inc.*, No. 1:12-CV-00179, 2013 WL 3967923, at *5 (W.D. Ky. Aug. 1, 2013) (concluding that the plaintiff established an Article III case or controversy where the defendant-patentee made verbal and written warnings in which it identified its '288 patent, warned

that it "aggressively enforce[d] its rights against infringers," including in an ongoing infringement case against another party over the '288 patent, and warned the plaintiff to proceed carefully with its product launch).

Conversely, courts have concluded that no actual case or controversy exists when the defendant-patent holder did not identify any specific patent(s) it believes the declaratory judgment plaintiff has infringed upon. *See, e.g., Wooster Bush v. Berman*, No. 5:06-cv-474, 2008 WL 1744782 (N.D. Ohio Apr. 11, 2008) (concluding that there was no justiciable controversy between the two parties because the defendant-patentee did not identify any of its specific patents that it believed the plaintiff's product(s) infringed upon); *3D Systems, Inc. v. Envisiontec, Inc.*, 575 F.Supp.2d 799, 805-06 (E.D. Mich. 2008) (concluding that, even though the defendant-patentee informed the plaintiff's distributor that it would "file an injunction" and sue the distributor for patent infringement, there was no substantial controversy because the defendant-patentee never took further action or specifically identified which patents it believed the plaintiff had infringed); *IDSmart, LLC v. IVI Smart Tech., Inc.*, No. 07-CV-1947, 2008 WL 11337436, at *5-6 (S.D. Cal. Sept. 29, 2008) (concluding that an "isolated remark" by the defendant-patentee's then-Chief Operating Officer that the defendant-patentee would sue the plaintiff did not establish an actual case or controversy where there was no other "dedicated 'course of conduct' to preserve" the defendant-patentee's rights in its allegedly infringed-upon patent).

Under the totality of the circumstances, the Court finds that no actual controversy exists. Kopp does not allege sufficient facts that might demonstrate the presence of a controversy of sufficient "immediacy and reality" to create a justiciable controversy under Article III. *See supra*. Further, Kopp does not allege that Metrasens ever identified a specific Metrasens patent that it

believed Kopp infringed upon. Instead, Kopp relies on a single factual allegation, that on October 29, 2020, Metrasens' CEO sent an email to Kopp indicating that Metrasens "has a number of patents that could be asserted against Kopp Development." (Doc. No. 1, ¶ 32.) Considering the case law set forth above, this sole factual allegation is plainly insufficient to establish that an actual case and controversy exists between the parties as to Kopp's declaratory judgment claim. Without identifying a specific patent, any potential infringement controversy between Kopp and Metrasens remains hypothetical and vague, and jurisdiction therefore cannot lie. *See, e.g., Wooster Bush*, 2008 WL 1744782 at *4-5; *3D Systems*, 575 F. Supp. 2d at 805-06.

Moreover, the Court concludes that Goodyear's stray October 29, 2020 remark that Metrasens "has a number of patents that could be asserted against Kopp Development" does not indicate the presence of a justiciable controversy. Goodyear did not provide any specifics about which Metrasens patent(s) Kopp may have infringed upon, or what Kopp product(s) infringed upon Metrasens' patents. Moreover, Metrasens did not pursue a dedicated course of conduct to preserve its rights in its patents. *See IDsmart, LLC*, 2008 WL 11337436, at *6. Even if the Court considered the November 2020 and April 2021 emails attached to Kopp's Opposition, in which Goodyear generally referenced the possibility of patent litigation, the Court would still conclude that Kopp's declaratory judgment claim fails for want of a justiciable controversy. Indeed, Goodyear only mentions the possibility of patent litigation because *Kopp* had recently accused *Metrasens* of patent infringement. (*See* Doc. No. 16, PageID# 105-07.) Any mention of patent litigation appears to relate to Goodyear's apprehension that Kopp would soon initiate litigation against Metrasens.

Kopp relies on *SanDisk* to assert that an actual case or controversy exists. (Doc. No. 16, PageID# 100-01.) Not only did Metrasens never identify a specific patent it believed that Kopp

9

infringed upon, Metrasens did not provide Kopp with a detailed, element-by-element infringement analysis like the presentation that the *SanDisk* defendant provided during its licensing "negotiation." *SanDisk*, 480 F.3d at 1382. Consequently, *SanDisk* does not aid Kopp's assertion that an actual controversy exists.

Kopp's citations to *Hewlett Packard* and *Sun Style International* are also unavailing. Kopp cites these cases to assert that Metrasens cannot defeat declaratory judgment jurisdiction by simply avoiding "magic words" like "litigation" and "infringement." (Doc. No. 16, PageID# 100-01.) However, unlike here, the *Hewlett-Packard* and *Sun Style International* defendants each demonstrated a clear intent to pursue enforcement of specific patents. In *Hewlett Packard*, the defendant-patentee, a patent holding company who only benefited from its patents through enforcement actions, twice contacted the plaintiff about a specific patent, requested the opportunity to speak to the plaintiff about licensing the patent, and insisted that the plaintiff either respond to it within a two-week deadline or else the defendant would understand the plaintiff did not "have anything to say about the merits of this patent, or its relevance to its Blade Server products." *Hewlett-Packard*, 587 F.3d at 1363-64. The Federal Circuit concluded that under the totality of the circumstances, including the defendant-patentee's status as a patent licensing entity and its insistence that the plaintiff respond to its licensing demands within two weeks, demonstrated the existence of a "definite and concrete" dispute between the two parties. *Id.*

In *Sun Style International*, the defendant-patentee's employees performed an hour-long physical examination of the plaintiff's product at a trade show. *Sun Style Intern.*, 2013 WL 3967923, at *5. Shortly thereafter, the defendant-patentee's CEO called two of plaintiff's employees and "stated that [the defendant] owned the '288 Patent, that it would aggressively enforce its rights in the

patent, and that it had previously taken legal action against another entity to do so." *Id.* The defendant-patentee also sent letters to the plaintiff reiterating the substance of the CEO's phone calls. *Id.* The defendant again identified the specific patent at issue, "stated it 'aggressively enforces its rights against infringers,' identified a separate case for infringement of the '288 Patent it had already filed against another entity, and advised the company to 'proceed carefully with any product launch' because '[the defendant] may pursue a variety of remedies for patent infringement . . . if it were to determine that [the plaintiff's] equipment is covered by the '288 Patent." *Id.* The court acknowledged that the defendant's letter did not threaten litigation in its plain language but concluded that a specific threat of infringement litigation was not necessary to establish jurisdiction when the defendant's actions demonstrated that it intended to aggressively pursue patent enforcement. *Id.*

Metrasens made no such comparable veiled threats of infringement litigation here. Kopp alleges only that Goodyear indicated that it "has a number of patents that could be asserted against" Kopp. (Doc. No. 1, ¶ 32.) Goodyear's vague indication that Metrasens has patents that could be asserted against Kopp, without any other enforcement conduct, is markedly different from the *Hewlett-Packard* defendant's time-sensitive licensing demands or the *Sun Style International* defendant's veiled enforcement threats and allusions to ongoing infringement litigation. Moreover, the defendants in *Hewlett-Packard* and *Sun Style International* identified specific patents they believed the plaintiffs had infringed. Metrasens did not.

The Court concludes that Kopp failed to meet its burden of proving a justiciable case or controversy as to the issue of whether Kopp infringed upon one or more Metrasens patents. Thus, the Court dismisses Claim Six for lack of subject matter jurisdiction.

IV.     Conclusion

Defendant's Motion to Dismiss Claim Six (Doc. No. 12) is GRANTED.

**IT IS SO ORDERED.**


Date:  February 28, 2022

     *s/Pamela A. Barker*
PAMELA A. BARKER
U.S. DISTRICT JUDGE