## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

Kopp Development, Inc.,                  Case No.  1:21cv1216

        Plaintiff,

        -vs-

                                   **JUDGE PAMELA A. BARKER**

Metrasens, Inc,

        Defendant.                  **MEMORANDUM OPINION & ORDER**

On December 4, 2024, this Court issued an Order directing the parties to submit briefing regarding the potential applicability of the presumption of damages to Plaintiff Kopp Development, Inc.'s false advertising Lanham Act claim. (Doc. No. 53.) Plaintiff Kopp Development Inc. (hereinafter "Plaintiff" or "KDI") and Defendant Metrasens, Inc. (hereinafter "Defendant" or "Metrasens") filed their Opening Briefs on January 10, 2025. (Doc. Nos. 54, 55.) KDI and Metrasens filed their Response Briefs on January 24, 2024. (Doc. Nos. 58, 59.)

For the following reasons, the Court finds that it cannot determine as a matter of law that KDI is entitled to the presumption of damages. The applicability of that presumption will depend upon the jury's findings as to literal falsity and willful deception, as set forth herein.

## I.      Relevant Background[1]

Metrasens and KDI both manufacture ferromagnetic detectors. The purpose of such devices is to detect magnetic items (such as iron) on a person's body or clothing before the person enters a

---

[1] The facts and procedural history of the instant action are set forth at length in this Court's November 19, 2024 Memorandum Opinion & Order and will not be repeated in full herein. (Doc. No. 51.) Familiarity with this Court's November 19, 2024 Opinion is presumed.

room containing an MRI scanner.  In approximately September 2018, Metrasens purchased a Kopp

Ferralert Solo unit from a third-party located in Singapore. (Simon Goodyear Depo. (Doc. No. 45-

19) at Tr. 78-79; Doc. No. 45-12 at PageID# 1822.) Metrasens provided the Kopp unit along with a

Metrasens Ferroguard Screener unit to a company called Intertek Testing & Certification, Ltd.

("Intertek") for comparison testing.   (Goodyear Depo. at Tr. 80-81.)  In May 2019, Intertek issued a

Test Report (the "Intertek Report.") (Doc. No. 45-11.)  The Intertek Report identified the Kopp unit

as a "Kopp Ferralert Solo" containing serial no. SL120217-01, and it identified the Metrasens' unit

as a "Metrasens Ferroguard Screener" containing serial no. SCFG-04-0159.  (*Id.* at PageID# 1809.)

The Intertek Report also included photographs of the Ferralert Solo and the Ferroguard Screener units

that were used in the testing.  (*Id.* at PageID# 1810.)  The Intertek Report concluded that "[t]he results

of the testing showed that the Metrasens Ferroguard Screener had a significantly higher detection rate

than the Kopp Ferralert Solo across the range of typical target objects."  (*Id.* at PageID# 1808.)

Metrasens created a summary of the Intertek Report (the "Summary") entitled "Ferromagnetic

Detection Performance Comparison: Ferroguard Screener -vs- Kopp Ferralert Solo." (Doc. No. 45-

14.)  The Summary provided, in relevant part, as follows:

> Ferromagnetic detection systems (FMDS) are not all the same. In an independent
> testing-laboratory comparison of 570 presentations of 9 typical risk items, there was a
> significant difference in the probability of items being detected, with Ferroguard
> Screener detecting 96% of presentations for the complete risk-item set, compared with
> 75% probability of detection for Kopp Ferralert Solo.
> . . .
>
> KEY FINDING
> For smaller risk-Items, Ferroguard Screener proved significantly more effective at
> detecting threats to patient and staff safety and operational performance (94% of risk
> items detected) than the Kopp Ferralert Solo (56% of risk items detected).
> . . .
>
> TESTING METHOD

2

- Independent testing-laboratory [fn omitted]
- **Standard, new, 2018 FMDS patient screening systems:**
  **Metrasens Ferroguard Screener;**
  **Kopp Development Ferralert Solo**
- Each product set at MAX sensitivity
- Identical, 360◦ turn screening protocol

(*Id.* at PageID#1846)(emphasis added).[2] The Summary also contained two comparative charts demonstrating metrics upon which Metrasens' product outperformed KDI's product. (*Id.*)  Below the first chart, the Summary provided:

> • For the smaller ferrous items typically encountered during MR patient screening, Ferroguard Screener detected 94% vs just 56% by Kopp Ferralert Solo.
>
> • Kopp Ferralert Solo missed significantly more ferrous risk-items at every body location tested, most especially at the feet area where detection performance was <50% that of Ferroguard Screener.

(*Id.*)  On July 29, 2019, Colin Robertson, Metrasens' then-Senior Vice President of Sales & Marketing, emailed the Summary to Metrasens' sales team and told them to "feel free to share with customers and distributors/partners."  (Doc. No. 45-18 at PageID# 2137.)

KDI's Owner, Keith Kopp, testified (on behalf of KDI as a Rule 30(b)(6) witness) that the Ferralert Solo unit that Intertek tested was an early prototype from when the product was first released in 2012.  (Kopp 30(b)(6) Depo. I  (Doc. No. 45-23) at Tr. 20-21.)  Mr. Kopp further testified that KDI had made several improvements to the Ferralert Solo product since 2012.  (*Id.* at Tr. 20; 38-39, 40-41.)  At some time in late 2020, Mr. Kopp and Metrasens' CEO and co-founder, Simon Goodyear,

---

[2] Metrasens also posted a statement about the Intertek Report on its website (the "Statement") that provided in relevant part: "DETECT THE RISK OTHER SYSTEMS MISS. Independent testing-laboratory study[fn] comparing the performance of Ferroguard Screener in detecting smaller, commonly encountered risk items, against the performance of the other most frequently seen whole-body FMDS [ferromagnetic detection systems]. . . . Only Ferroguard Screener uses Fluxgate sensors, making it the most sensitive FMDS available."  (Doc. No. 45-20 at PageID# 2277.)  The footnote to the foregoing provided: "Intertek Testing & Certification Performance Laboratory. (2019) Full report available from Metrasens."  (*Id.* at PageID# 2280.)

3

had a conversation about the Intertek Report, during which Mr. Kopp told Mr. Goodyear that the

Ferralert Solo unit that Intertek tested was an "old" version.  (Doc. No. 45-21 at PageID# 2283.)  On

January 25, 2021, Mr. Goodyear sent an email to Mr. Kopp, in which he stated (in relevant part) as

follows:

> I wanted to follow up on a couple of issues you brought up in our conversation prior to Christmas. In particular your suggestion that Metrasens has behaved inappropriately with the lntertek comparative study data. ***
>
> Your second point on this topic was that the Kopp Development product used in the study was an 'old' version.  Although I have been unable to confirm the manufacturing date of the product, we believe the comparative study was fair, with a current version of your product, available on the market at that time. However, if you are willing to confirm the age of the product and indicate evidence of modifications or upgrades to the commercially available system at that time that you believe would impact the detection results then Metrasens would be agreeable to resubmit the latest Metrasens Screener product to be tested by lntertek alongside a recently manufactured Ferralert Solo product. Should the conclusions of the new report be substantially different from their last report then Metrasens would withdraw the previous lntertek report from circulation on our website.

(*Id*. at  PageID#  2282-2283.)  The  following  day,  Mr.  Kopp  replied,  via  email,  as  follows:

> I must confess…that your response was very unsatisfactory. You admit that you were unable to confirm the manufacturing date of our detector. Yet on your literature under lntertek TEST METHOD, you stated the following: "Standard, new 2018 FMDS patient screening systems: Metrasens Ferroguard Screener: Kopp Development Ferralert Solo."
>
> The lntertek test report did indicate the serial number of our product. The FerrAlert® Solo tested was manufactured in 2012. By your own admission, you did not now [sic] the date of manufacture yet you claimed that it was new, standard and a 2018 model. We take the publishing of knowingly false information very seriously since it has damaged our reputation and potentially cost us sales.

(*Id*. at PageID# 2281.)  Mr. Goodyear testified that, aside from the above email, Mr. Kopp did not

provide any evidence of the date of manufacture of the Ferralert Solo product that was tested by

4

Intertek.  (Goodyear Depo. at Tr. 88-89, 108-109.)  References to the Intertek Report remained on Metrasens' website until approximately September 1, 2023.  (Doc. No. 40-1 at PageID# 1290.)

Meanwhile, on June 21, 2021, KDI filed a Complaint against Metrasens asserting claims for false advertising under the Lanham Act, tortious interference with business relations, negligent misrepresentation, and defamation.[3]  (Doc. No. 1.)  Therein, KDI alleges that it has been damaged by loss of income and damage to its reputation as a direct result of Metrasens' publishing, marketing, or advertising of false information regarding KDI's products.  (*Id*. at ¶¶ 43, 48, 54.)  In addition to money damages, KDI requests an order enjoining Metrasens from "publishing, advertising, marketing and/or promoting any false or misleading information regarding [KDI's] products." (*Id*. at Prayer for Relief.)

On June 26, 2024, Metrasens filed a Motion to Exclude Expert Testimony of Plaintiff's Damages Expert John Burke, Ph.D., and for Summary Judgment as to All Claims.  (Doc. No. 42.)  Therein, Metrasens argued that KDI could not show a genuine issue of material fact regarding either the existence or amount of its damages.[4]  (*Id*.)  Metrasens further asserted that KDI's request for injunctive relief is moot because Metrasens removed the Intertek Report and all references thereto from its website and agreed not to use the Intertek Report or its information in the future.  (*Id*.)

KDI opposed Metrasens' Motion.  (Doc. No. 45.)  Regarding the existence of damages, KDI contended that damages should be presumed for its false advertising claim under the Lanham Act because Metrasens targeted KDI with a false advertisement that Metrasens knew to be false.  (*Id*.)  Alternatively, KDI contended that, even if there is no presumption of damages, the record raised a

---

[3] KDI also asserted claims for patent infringement (Count V) and declaratory judgment of noninfringement (Count VI). Those claims, however, were subsequently dismissed.  (Doc. Nos. 23, 43.)

[4] In this regard, Metrasens argued that the testimony of KDI's damages expert, Dr. Burke, should be excluded as unreliable under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993). (*Id*.)

5

genuine issue of material fact that Metrasens proximately caused damage to KDI.  (*Id.*)  Regarding the amount of its damages, KDI argued that, even if the testimony of its damages expert, Dr. Burke, was excluded, KDI's President, Keith Kopp, was competent to testify regarding KDI's lost business and reduced revenue.  (*Id.*)  Lastly, KDI maintained that it still requests injunctive relief and is not required to accept Metrasens' word that it will no longer use the Intertek Report.  (*Id.*)

In its Reply Brief, Metrasens argued, in relevant part, that the presumption of damages does not apply because KDI cannot show literal falsity and bad faith. (Doc. No. 47.) Alternatively, Metrasens asserted that if, even if the presumption does apply, KDI still cannot show either an injury in fact or the amount of its marketplace damages. (*Id.*)

On November 19, 2024, this Court issued a Memorandum Opinion & Order granting in part and denying it in part Metrasens' Motion.  (Doc. No. 51.)  The Court first addressed whether there is a genuine issue of material fact regarding the existence of KDI's damages.  After setting forth the elements of a Lanham Act false advertising claim, the Court determined that it was not necessary to determine the applicability of the presumption of damages to resolve Metrasens' Motion, explaining as follows:

> Regardless of whether the presumption of damages applies, the Court must still determine whether there is a genuine issue of material fact regarding KDI's actual damages. Specifically, even if the Court were to determine that the presumption applies, it must still determine whether Metrasens has rebutted the presumption by demonstrating the absence of actual damages. *See Innovation Ventures*, 529 F. App'x at 566. Moreover, the presumption would not apply to KDI's three non-Lanham Act claims [i.e., tortious interference, negligent misrepresentation, and defamation]. The Court acknowledges that KDI, in its Brief in Opposition, requests that the Court find that "Metrasens' conduct warrants a presumption of damages whereby Metrasens will bear the burden at trial to prove that it did not cause damage to KDI and further bear the burden of disproving the damages asserted by KDI." (Doc. No. 45, PageID#1644.) However, KDI has not filed a motion seeking such relief. Courts have held that it is improper to ask a court for affirmative rulings in a response brief opposing a motion for summary judgment. *See Douglas v. Pere Marquette Shipping Co.*, 2015 WL

5159432 at *3 (E.D. Mich. Sept. 2, 2015). Accordingly, the Court will proceed to determining whether there is a genuine issue of material fact regarding KDI's actual damages.

(*Id.* at p. 16.)  The Court concluded that, with respect to KDI's Lanham Act claim, there was a genuine issue of material fact as to whether Metrasens' advertisements proximately caused KDI to lose business from the University of Pittsburgh Medical Center ("UPMC"), one of KDI's existing customers.  (*Id.* at pp. 22-25.)  The Court further found that, "viewing Mr. Kopp's testimony regarding KDI's reduced revenue in conjunction with the evidence discussed above regarding KDI's loss of business with UPMC, the record demonstrates a genuine issue of material fact regarding whether Metrasens' advertisements caused KDI to experience damages in the form of reduced revenue for purposes of its Lanham Act claim."  (*Id.* at p. 27.)  Lastly, the Court determined that, "as the Court concludes that the record demonstrates that there is a genuine issue of material fact regarding the existence of damages for KDI's Lanham Act claim, the same is true with respect to KDI's Ohio tort claims."  (*Id.* at p. 28.)  Thus, the Court denied Metrasens' Motion regarding the existence of KDI's damages for both its Lanham Act and Ohio tort claims.  (*Id.*)

Regarding the amount of KDI's damages, the Court first concluded that KDI could not rely on Dr. Burke's opinion regarding the amount of KDI's damages based on KDI's projected sales figures because Dr. Burke's testimony was not reliable under Fed. R. Evid. 702 and *Daubert*.[5]  (*Id.*

---

[5] Regarding KDI's argument that Dr. Burke should be permitted to testify regarding the capitalization of KDI's losses, the Court found, in relevant part, as follows:  "[I]n the event that KDI introduces admissible evidence at trial that it suffered a projected loss of revenue in a reasonably certain amount as a result of Metrasens' advertisements, the Court will consider allowing Dr. Burke to testify regarding the capitalization of that amount of damages. Any testimony by Dr. Burke on this issue would be contingent, however, on KDI's presentation of admissible evidence establishing both a reasonably certain amount of projected damages, as well as a reasonable period of time over which to capitalize any such projected damages. The Court concludes that it is premature to resolve this issue at this time and will address the permissible scope and nature of any such testimony, if and as necessary, at a later stage of the proceedings." (*Id.* at p. 42.)

7

at p. 36-38.)  The Court then rejected Metrasens' argument that KDI's only evidence regarding the amount of its damages is the testimony of Dr. Burke, explaining as follows:

> As discussed *supra*, the Court has found that there are genuine issues of material fact regarding KDI's claims that, as a result of Metrasens' allegedly false advertisements, it suffered damages in the form of loss of business from UPMC and reduced revenue. At trial, KDI will have the opportunity to introduce evidence to demonstrate, with reasonable certainty, the amount of its actual damages associated with its alleged reduced revenue and/or loss of the UPMC business.  For example, KDI may seek to introduce testimony from Mr. Kopp and/or other KDI employees (such as Anna Srb) regarding the dollar value of the specific lost sales to UPMC that are referenced in the February 2021 emails between Ms. Srb and UPMC Project Manager Heather Yahn. (Doc. No. 45-5, PageID#s 1759-1763.)  KDI may also seek to introduce documentary evidence (in the form of contracts, sales invoices, etc.) to support the amount of actual damages that it allegedly suffered as a result of this loss of UPMC business.  Regarding its alleged lost revenues, KDI may seek to introduce testimony from Mr. Kopp and/or other KDI employees regarding KDI's sales figures/revenue before and after Metrasens began using its allegedly false advertisements.  KDI may also seek to introduce documentary evidence (such as Mr. Kopp's damages summary (Doc. No. 45-3) and KDI's Profits and Loss Statements, for example) to further attempt to prove a reduction in revenue as a result of Metrasens' use of the Intertek Report and Summary.

(*Id*. at pp. 43-44.)  Lastly, the Court rejected Metrasens' argument that KDI's request for injunctive relief is moot.  (*Id*. at pp. 48-51.)

The Court set the Final Pretrial for February 11, 2025 and jury trial to commence on March 18, 2025.  (Doc. No. 50.)  Recognizing that the potential applicability of the presumption of damages to KDI's Lanham Act claim may affect the parties' trial preparations, the Court conducted a telephonic status conference on December 4, 2024 to discuss a briefing schedule regarding that issue.[6] Specifically, the Court ordered the parties to submit briefing regarding the following two, specific issues:

---

[6] The Court also discussed with counsel the potential for mediation.  Counsel for KDI indicated that he did not believe that mediation would be fruitful.  Therefore, the Court did not refer this matter to mediation before the Magistrate Judge.

1.    For a false advertising claim under the Lanham Act, does the Sixth Circuit require both literal falsity **and** deliberate intent/bad faith for a presumption of money damages to apply? Or is literal falsity related to a different element of a Lanham Act false advertising claim?

2.    Is the presumption of damages a legal issue, factual issue, or both?

(Doc. No. 53) (emphasis in original).  KDI and Metrasens thereafter submitted their Opening Briefs on January 10, 2025, followed by their Responsive Briefs on January 24, 2025.  (Doc. Nos. 54, 55, 58, 59.)

## II.    Analysis

### A.    Legal Background

Prior to addressing the parties' specific arguments, the Court begins with a discussion of the legal standards relating to KDI's false advertising claim.  The Lanham Act provides in relevant part as follows:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).  In order to establish a false-advertising claim under the Lanham Act, the plaintiff must establish the following five elements: "(1) the defendant has made false or misleading

9

statements of fact concerning his own product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence a deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff." *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 689 (6th Cir. 2000) (quoting *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999)).

Regarding the first element, the Sixth Circuit has emphasized that "only statements of fact are actionable." *FedEx Ground Package System, Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 453 (6th Cir. 2024). "That is, the statement must assert a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Id*. (quoting *Pizza Hut, Inc. v. Papa John's Int'l, Inc.,* 227 F.3d 489, 496 (5th Cir. 2000)). In other words, one can prove the statement true or false through "empirical verification." *Id*. (quoting *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir. 1986)). Statements of opinion will not support a false-advertising claim. *Am. Council*, 185 F.3d at 614. *See also FedEx Ground Package System, Inc.*, 97 F. 4th at 453.

Regarding "[t]he third and fifth elements [i.e.,] deception and injury," the Sixth Circuit has explained that these elements "are both components of causation generally." *Am. Council*, 185 F.3d at 614. "The deception [or third] element asks whether the defendant's misstatements caused the consumer to be deceived." *Id*. "The injury [or fifth] element asks whether the defendant's deception of the consumer caused harm to the plaintiff." *Id*. Notably, "the sort of proof of these elements a

plaintiff must show varies depending upon whether damages or injunctive relief is sought." *Balance Dynamics Corp.*, 204 F.3d at 689.

In *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir.1999), the Sixth Circuit examined the proof necessary to satisfy the deception element where (as here) a plaintiff seeks marketplace damages.  There, the Sixth Circuit held as follows:

> **When a plaintiff seeks an award of monetary damages for false or misleading advertisement under the Lanham Act, he may show either that the defendant's advertisement is literally false or that it is true yet misleading or confusing**. Where statements are literally false, a violation may be established without evidence that the statements actually misled consumers. Actual deception is presumed. Where statements are literally true, yet deceptive, or too ambiguous to support a finding of literal falsity, a violation can only be established by proof of actual deception (i.e., evidence that individual consumers perceived the advertisement in a way that misled them about the plaintiff's product).  A plaintiff relying upon statements that are literally true yet misleading "cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react." *Sandoz Pharm. Corp. v. Richardson–Vicks, Inc.*, 902 F.2d 222, 229 (3d Cir.1990).

*Id.* at 614 (internal citations omitted) (emphasis added).[7]  *See also LidoChem, Inc. v. Stoller Enterprises, Inc.,* 500 Fed. Appx. 373, 380 (6th Cir. 2012); *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 735-736 (6th Cir. 2012).

"The standard for proving literal falsity is rigorous."  *Buetow v. A.L.S. Enterprises, Inc.*, 650 F.3d 1178, 1185 (8th Cir. 2011).  *See also Select Comfort Corp. v. Baxter*, 996 F.3d 925, 938 (8th Cir. 2021) (same).  A literally false statement is one that is "'bald-faced, egregious, undeniable, over

---

[7] By contrast, the Sixth Circuit has noted that "'injunctive relief may be obtained by showing only that the defendant's representations about its product *have a tendency to* deceive consumers while recovery of damages requires proof of actual consumer deception.'" *Id.* (quoting *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F.Supp. 1549, 1551 (E.D.Penn.1985)) (emphasis added). "This lower standard has arisen because when an injunction is sought, courts may protect the consumer without fear of bestowing an undeserved windfall on the plaintiff." *Id.*

the top.'" *FedEx Ground Package System, Inc.*, 97 F.4th at 453 (quoting *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc*., 586 F.3d 500, 513 (7th Cir. 2009)). Moreover, a literally false statement must convey "an unambiguously deceptive" meaning. *Id. See also Wysong Corp. v. APN, Inc*., 889 F.3d 267, 270 (6th Cir. 2018). Thus, a statement is not literally false if it reasonably conveys different messages. *FedEx Ground Package System, Inc.,* 97 F.4th at 453. In evaluating a challenged statement, courts should consider the statement in its entirety and in its full context. *Id. See also Innovation Ventures, LLC v. N.V.E., Inc*., 694 F.3d 723, 735-736 (6th Cir. 2012) ("'A 'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'") (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co*., 290 F.3d 578, 586–87 (3d Cir. 2002)).

As noted above, if a plaintiff seeking marketplace damages is unable to show that an advertisement is literally false, it may instead show that the advertisement is "literally true, yet misleading or confusing."[8] *Am. Council*, 185 F.3d at 614. *See also FedEx Ground Package System, Inc.,* 97 F.4th at 453-454. In these instances, the plaintiff must prove actual deception to satisfy the second element of a Lanham Act false advertising claim. *See Innovation Ventures, LLC*, 694 F.3d at 735; *FedEx Ground Package System, Inc.,* 97 F.4th at 454. "Proof of actual deception requires demonstrating that consumers were actually deceived by the defendant's ambiguous or true-but-misleading statements." *Am. Council,* 185 F.3d at 616. Moreover, "[t]here must be evidence that a

---

[8] A misleading statement is "literally true, yet deceptive, or too ambiguous to support a finding of literal falsity[.]" *Am. Council*, 185 F.3d at 614. *See also FedEx Ground Package System, Inc*., 97 F.4th at 454.

'significant portion' of the consumer population was deceived."[9]  *Id.* (quoting *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir.1995)).

Regarding the proof necessary to establish the fifth (or injury) element, the Sixth Circuit has explained as follows:

> [F]or purposes of comparative advertising, we have recognized a limited exception to the general rule that a false-advertising plaintiff must prove damages. In *Balance Dynamics Corp. v. Schmitt Industries, Inc.*, we adopted the reasoning of an Eighth Circuit case that presumed damages in instances of willful deception. 204 F.3d 683, 694–95 (6th Cir.2000) (quoting *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir.1997)). We stressed, however, that the presumption "extend[s] only to cases of comparative advertising where the plaintiff's product was specifically targeted," explaining that "[o]therwise ... 'a plaintiff might enjoy a windfall from a speculative award of damages by simply being a competitor in the same market.'" *Id.* at 694 (quoting *Porous Media*, 110 F.3d at 1334–35). Recognizing this boundary, we found the presumption overcome by evidence of no marketplace injury. *Id.* at 695.

*Innovation Ventures, LLC v. Bhelliom Enterprises Corp.*, 529 Fed. Appx. 560, 566 (6th Cir. 2013). *See also Balance Dynamics Corp.*, 204 F.3d at 693-694 (permitting presumption of damages where there is proof of willful deception but only in "cases of comparative advertising where the plaintiff's product was specifically targeted.")  Such presumption may be overcome by evidence of no marketplace injury.  *See Innovation Ventures, LLC*, 529 Fed. Appx. at 566 (citing *Balance Dynamics Corp.*, 204 F.3d at 695).

## B.    Analysis

At the outset, the Court notes that one of the reasons it ordered supplemental briefing was to provide the parties the opportunity to address whether literal falsity is, in fact, required for the presumption of damages to apply under Sixth Circuit precedent.  Rather than addressing this issue,

---

[9] "Successful plaintiffs usually present evidence of the public's reaction through consumer surveys."  *Am. Council*, 185 F.3d at 616. *See also FedEx Ground Package System, Inc.*, 97 F.4th at 454 ("Plaintiffs typically prove deception using consumer surveys").

both KDI and Metrasens assert (without further discussion or elaboration) that KDI must demonstrate that Metrasens' advertisement is literally false for the presumption of damages to apply to KDI's request for marketplace damages.[10] *See* Doc. Nos. 54, 55, 58, 59. The Court is not entirely convinced that the Sixth Circuit has clearly found this to be the case.[11] However, given that the parties do not argue otherwise, the Court deems this issue waived and will assume that KDI must show that Metrasens' advertisement is literally false for the presumption of damages to apply.

While the parties agree that KDI must show literal falsity, the parties disagree on what additional showings KDI must make for the presumption of damages to apply. KDI argues that "[w]hile the combination of literal falsity with bad faith certainly results in a presumption of money damages, and those facts exist in this matter, Sixth Circuit precedent also provides that literal falsity combined with targeted advertising against a main competitor also warrants a presumption of money damages." (Doc. No. 54 at PageID# 2682.) KDI then goes on to argue that the presumption of damages applies in the instant case "under either approach." (*Id.*)

---

[10] Both KDI and Metrasens also made this assumption in their summary judgment briefing. *See* Defendant's Reply Brief (Doc. No. 47) at PageID# 2576 ("In fact, the relevant presumption of damages recognized by the Sixth Circuit in *Balance Dynamics* requires both an intent to deceive and literal falsity."); KDI's Motion for Leave to File Sur-Reply (Doc. No. 49-1) at PageID# 2611 ("The Presumption of Damages Requires that the Advertisement be Literally False").

[11] Neither *Balance Dynamics Corp., supra* nor *Innovation Ventures LLC v. Bhellium Enterprises, supra* expressly hold that a plaintiff must show literal falsity for the presumption of damages to apply. In *Balance Dynamics*, the Sixth Circuit noted that "in certain circumstances, the literal falsity of an advertisement <u>or</u> evidence of deliberate intent or bad faith has sufficed to entitle plaintiff to certain forms of relief or to create a presumption of damages in the marketplace." *Balance Dynamics Corp.*, 204 F.3d at 693 (emphasis added). In *Innovation Ventures LLC v. Bhellion, supra*, the Sixth Circuit did not mention literal falsity and instead noted that it permitted the presumption of damages "in instances of willful deception" but only "in cases of comparative advertising where the plaintiff's product was specifically targeted." *Innovation Ventures, LLC v. Bhellion*, 529 Fed. Appx. at 566. It is true that some of the challenged statements in *Balance Dynamics Corp., supra* and *Innovation Ventures LLC v. Bhellion Enterprises, supra* were literally false. However, the fact that literal falsity was present in these cases does not necessarily mean that it is required for the presumption of damages to apply.

14

KDI first argues that courts in this Circuit have applied the presumption of damages without a finding of intent on the part of the defendant "where the literally false statement was targeted at a direct competitor."  (*Id*. at PageID# 2683.)  KDI asserts that Metrasens' conduct satisfies this test because Metrasens produced a comparative study (i.e., the Intertek Report) which contained literal falsities and specifically targeted KDI "by name and product."  (*Id.* at PageID# 2684.)  Based on this alleged conduct, KDI asserts that Metrasens "can and should be found, as a matter of law, to have literally falsely advertised" and the trial in this matter should proceed solely for the purpose of calculating KDI's damages.[12]  (*Id*.)

KDI next argues that, even if deliberate intent/bad faith is required for the presumption of damages to apply, Metrasens' conduct satisfies this test.  (*Id*. at PageID#s 2684-2685.)  Specifically, KDI argues that "Metrasens demonstrated recklessness amounting to willfulness" when it (1) purchased the Kopp Ferralert Solo product despite knowing that the supplier "had been known in the past to provide old stock;" and then (2) "willfully put out an ad" saying that the KDI product was a "Standard, new, 2018" model "with no support to label it as such."  (*Id*.)  KDI further asserts that willfulness is shown by Metrasens' decision to "keep up the campaign and continue to publish after express notice that the message was literally false."  (*Id*.)  Lastly, KDI asserts that "both the question of literal falsity and reckless/willful conduct are determinations that are made as a matter of law." (Doc. No. 58 at PageID# 2710, 2712-2714.)

---

[12] Going well beyond the scope of this Court's briefing Order, KDI maintains that a finding of literal falsity satisfies the second and third elements of its Lanham Act false advertising claim and, therefore, it is also entitled to a presumption of actual deception and materiality.  (*Id*. at PageID# 2687-2689, 2694.)  KDI requests "leave to present the issue in the form of a motion for summary judgment" or, alternatively, that this Court construe KDI's Opening Brief as a motion for summary judgment.  (*Id*.)  For the reasons discussed at greater length below, KDI's requests are wholly improper and denied.

Metrasens disputes that literal falsity in targeted advertising cases is sufficient to establish a presumption of damages and maintains that "governing precedent in the Sixth Circuit permits a presumption of damages only if both literal falsity and deliberate intent/bad faith are shown."  (Doc. No. 55 at PageID#s 2695, 2698-2699; Doc. No. 59 at PageID# 2717.)  Metrasens asserts that the existence of deliberate intent constitutes a question of fact that must be submitted to the jury.  (Doc. No. 55 at PageID# 2699-2700.)  Metrasens argues that literal falsity, on the other hand, is a mixed question of fact and law.  (*Id.* at PageID# 2700.)  Specifically, Metrasens maintains that "the factual issue of product performance cannot be resolved at this point in the litigation (the 'falsity' question) but whether the statement is ambiguous is indeed a question of law for this Court."  (Doc. No. 59 at PageID# 2721.)  Finally, Metrasens asserts that, to the extent KDI requests that this Court "resolve the fact issue of willfulness" in the context of the parties' supplemental briefing, such request should be denied as procedurally improper since KDI failed to timely file a summary judgment motion on this issue.  (*Id.* at PageID# 2719.)

The Court will begin by addressing the parties' arguments that Metrasens' false advertisement is literally false and will then consider the issue of deliberate intent/bad faith.

### 1.    Literal Falsity

KDI argues that Metrasens' statement in its Summary of the Intertek Report (Doc. No. 45-14) that the models used in the test comparison were the "Standard, new, 2018 FMDS patient screening systems: Metrasens Ferroguard Screener; Kopp Development Ferralert Solo" is literally false.  (Doc. No. 54 at PageID# 2691.)  KDI asserts that the Kopp product that was tested by Intertek was, in fact, manufactured in 2012 (not 2018) and was not the model that KDI was selling at the time of the Intertek testing.  (*Id*. at PageID# 2692) (citing Doc. No. 45-21 at PageID# 2281;  Kopp Depo. (Doc.

16

No. 45-23) at Tr. 10.)  KDI asserts that "the only reasonable reading of the [Summary] shows that Metrasens falsely stated that they performed a comparison test on the two competing products customers would be considering at that time." (Doc. No. 54 at PageID# 2692.)  KDI further maintains that "'2018' is a literally false manner to describe the tested KDI 2012 ferromagnetic scanner" and "leads all reasonable people, not just those within the industry, but anyone reading the ad to believe that the Intertek Report tested the product KDI was selling at the time against the product Metrasens was selling at the time." (*Id*. at PageID# 2693.) Thus, KDI argues that this Court can find, as a matter of law, that the challenged statement in the Summary is literally false.

In response, Metrasens argues that the challenged statement is not literally false because "nothing about the statement purports to state the date of manufacture for the product." (Doc. No. 59 at PageID# 2721.)  Rather, Metrasens asserts, "the statement could easily mean, and would be true, as to products that are 'standard' (unmodified and not special order) and 'new 2018' systems (newly purchased in 2018 and not previously owned or used)." (*Id*.) Because there is a reasonable alternative to KDI's interpretation of the challenged statement, Metrasens argues that the statement does not have an "unambiguously deceptive meaning" and, therefore, is not literally false. (*Id*.) *See also* Doc. No. 47 at PageID# 2577.

As noted *supra*, to be literally false, plaintiff must show that the statement is "'bald-faced, egregious, undeniable, over the top'" and conveys "an unambiguously deceptive" meaning.  *FedEx Ground Package System, Inc*., 97 F.4th at 453 (quoting *Schering-Plough Healthcare Prods*., Inc., 586 F.3d at 513).  *See also Wysong Corp*, 889 F.3d at 270.  "[P]laintiffs alleging a literal falsehood are claiming that a statement, on its face, conflicts with reality, a claim that is best supported by comparing the statement itself with the reality it purports to describe."  5 McCarthy on Trademarks

17

and Unfair Competition § 27:56 (5th ed.) (quoting *Schering Corp. v. Pfizer Inc*., 189 F.3d 218, 229 (2d Cir. 1999), as amended on reh'g, (Sept. 29, 1999)). *See also Shepard & Associates, Inc. v. Lokring Technology, Inc*., 2023 WL 5412457 at * 17 (N.D. Ohio Aug. 21, 2023).

"Courts should consider the challenged statement in its entirety and in 'full context.'" *FedEx Ground Package System, Inc*., 97 F.4th at 454 (quoting *United Indus. Corp. v. Clorox Corp*., 140 F.3d 1175, 1180 (8th Cir. 1998)). "A 'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'" *Innovation Ventures, LLC v. N.V.E*., 694 F.3d at 735-736 (quoting *Novartis Consumer Health, Inc.*, 290 F.3d at 586–87). Moreover, and as noted *supra,* "only statements of fact are actionable" in a false advertising claim. *FedEx Ground Package System, Inc*., 97 F.4th at 453.

The initial determination of whether the challenged statement is too ambiguous to support a finding of literal falsity, is a matter of law. *See Am. Council*, 185 F.3d at fn 2; *ACT, Inc. v. Worldwide Interactive Network*, 2020 WL 12574239 at * 32 (E.D. Tenn. March 10, 2020). However, the determination as to "whether facts exist to justify the statement is a question of fact." *Am. Council*, 185 F.3d at fn 2. *See also Service Jewelry Repair, Inc. v. Cumulus Broadcasting LLC*, 145 F.Supp.3d 737, 746 (M.D. Tenn. 2015).

For the following reasons, the Court finds that Metrasens' statement that the models used in the test comparison were the "Standard, new, 2018 FMDS patient screening systems: Metrasens Ferroguard Screener; Kopp Development Ferralert Solo" (Doc. No. 45-14) (hereinafter "the challenged statement") is not ambiguous. The Court first notes that the challenged statement is a statement of fact (not opinion) because a person can objectively verify whether the Kopp product

used in the Intertek test comparison is a "standard, new, 2018 FMDS patient screening system." *See FedEx Ground Package System*, *Inc*., 97 F.4th at 455.  In other words, the challenged statement is a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Id.* at 453.

The Court further finds that, when read in its full context, the meaning of the challenged statement is not ambiguous.  According to Metrasens, the Intertek comparison testing was intended to provide "true, factual data" to "the hospitals who are making the decisions to purchase these products" to allow them to "understand very well the performance of those products."  (Goodyear Depo. at Tr. 77.)  The Summary sets forth the results of that testing and clearly states that Intertek's testing compared "standard, new, 2018 FMDS patient screening systems" from Metrasens and Kopp. The Court concludes that, in this context, any reasonable consumer of MRI screeners would interpret the statement "standard, new, 2018 FMDS patient screening systems" as meaning that the KDI product involved in the testing was (1) standard; (2) new; and (3) manufactured and sold by KDI in 2018.

The Court rejects Metrasens' argument that the challenged statement is not "bald-faced, egregious, undeniable, or over the top" because it does not "purport to state the date of manufacture for the KDI Ferralert Solo" and, therefore, the reference to "new, 2018" could reasonably be interpreted to mean that the KDI product was newly purchased in 2018.  (Doc. No. 59 at PageID# 2721.)  As noted above, Metrasens concedes that the purpose of the Intertek testing was to allow hospitals to compare the current performance of the competing KDI and Metrasens products.  Read in this context, the Court finds that the juxtaposition of "new" and "2018" in the challenged statement

19

clearly and unambiguously conveys that the KDI Ferralert Solo and the Metrasens Ferroguard Screener tested by Intertek were new products that were manufactured in 2018.

That does not end the inquiry, however.  Although the Court has made the initial determination that the challenged statement is not ambiguous as a matter of law, the Sixth Circuit has held that the determination as to "whether facts exist to justify the statement is a question of fact." *Am. Council*, 185 F.3d at fn 2.  *See also Service Jewelry Repair, Inc.*, 145 F.Supp.3d at 746.  As discussed in more detail below, it is not clear that Metrasens has conceded that the KDI Ferralert Solo that was tested by Intertek is, in fact, a 2012 prototype.  Thus, the Court must evaluate whether there is a jury issue as to "whether facts exist to justify" the unambiguous meaning of the challenged statement; i.e., that the KDI Ferralert Solo was manufactured in 2018. The record reflects the following.

Mr. Kopp testified that he could tell that the KDI Ferralert Solo that was tested by Intertek was a 2012 prototype because of its color and serial number.  (Kopp Nov. 8, 2022 Depo. (Doc. No. 45-17) at Tr. 88.)  He explained that the Ferralert Solo was first introduced by KDI in 2012.  (*Id.* at Tr. 85.)  The early (or "beta") units were silver-gray in color, while the "production" units were ivory. (*Id.* at Tr. 87-90, 117.)  Mr. Kopp testified that the KDI Ferralert Solo that was tested by Intertek was "one of the beta units because it was a different color" from the production units. (*Id*. at Tr. 88.) Regarding the serial number, Mr. Kopp testified that the serial number of the Ferralert Solo that was tested by Intertek was SL120217-01.  (*Id.* at Tr. 96.)  He explained that the letters "SL" stand for Solo, and the numbers 120217-01 "tells you it's built in 2012, the second month, 17th day, and it was

20

the first one built on that day."[13]  (*Id.* at Tr. 96, 98.)  According to Mr. Kopp, this demonstrates that the Ferralert Solo tested by Intertek was a 2012 prototype.  Mr. Kopp further testified that KDI had made several improvements to the Ferralert Solo product since 2012.  (Kopp June 29, 2023 Depo. (Doc. No. 45-23) at Tr. 20, 38-39, 40-41; Kopp Nov. 8, 2022 Depo. (Doc. No. 45-17) at Tr. 118.)  In other words, Mr. Kopp testified that the KDI product that Intertek tested was not, in fact, manufactured in 2018—instead, it was an earlier, and less sensitive, "prototype" of KDI's Ferralert Solo.

In deposition, Metrasens' CEO, Simon Goodyear, testified that KDI had failed to provide any evidence to support this assertion:

> Q.  *** There's no clarification on your website that the study, the Intertek study that resulted in this data, compared a 2018 Metrasens product to a 2012 Kopp product, correct?
>
> MR. SMITH: Objection; form.
>
> A.  There is no information like that. Our understanding was that we procured a product in 2018. **And despite me asking for evidence from Keith [Kopp] that that product as he claims is from 2012, he still failed to provide that data to me**. So how could we state anything other than this is a comparable study.
>
> ***
>
> Q.  My question was: You have been told by Kopp that the study is comparing an older 2012 Kopp product to a 2018 Metrasens product, correct?
>
> A.  That is what he has claimed, but he has given us no indication prior to the lawsuit when I asked, that is actually correct. So we are still, given that he is

---

[13] Mr. Kopp testified that, while it was common to use a "date code" that "allows you to put serial numbers in date order" (i.e., year, month, day), there was "no industry norm that [he was] aware of" within the ferromagnetic detector industry. (*Id.* at Tr. 95, 105.)  Mr. Kopp conceded that Metrasens uses a "different scheme" for its serial numbers.  (*Id.* at Tr. 96.) Mr. Kopp further testified that KDI's "internal people" would immediately know what "year, month and day the product was made" by looking at the serial number on a KDI product, but that "outside of the company it is [just] a number."  (*Id.* at Tr. 97, 100.)

telling us it's 2012 and we bought it 2018, **we have no evidence that it is from 2012.**

\*\*\*

Q.     Have you ever made a final determination of the date of manufacture of the Kopp product you provided to Intertek?

MR. SMITH: Objection to form.

A.      I'm still waiting for information from Keith Kopp to that effect.

\*\*\*

Q.     \*\*  My question was: As you sit here today, do you have a belief as to what the actual date of manufacture of the product that you provided to Intertek is?

MR. SMITH: Objection to form.

A.     **I do not have a date that I would say is factually proven as to be the date of manufacture**. So I cannot answer the question.

(*Id*. at Tr. 108-109; 113-114) (emphasis added). [14] Moreover, Mr. Goodyear questioned whether Mr. Kopp's assertion that the KDI Ferralert Solo was a 2012 prototype was accurate, given that (1) Metrasens bought the KDI Ferralert Solo "on the open market as per a customer could have bought it;"[15] (2) the model number of the KDI Ferralert Solo that Metrasens bought matched the model number of the KDI Ferralert Solo that was being sold at the time; (3) the price that Metrasens paid for the Ferralert Solo (i.e., $13,800) fell within the market price range for that product at the time;

---

[14] Mr. Goodyear also testified that the serial number of the KDI Ferralert Solo (SL120217-01) could just as easily have been interpreted as indicating a manufacturing date of December 2, 2017.  (Goodyear Depo. at Tr. 112.)

[15] KDI introduced some evidence that Metrasens was aware that the third party from whom it purchased the KDI Ferralert Solo had had been known "in the past to provide old stock."  (Goodyear Depo. at Tr. 64; Doc. No. 45-8.)  Mr. Goodyear testified that the third party in question was "a well-known and trusted third party" seller.  (Goodyear Depo. at Tr. 79.)

and (4) the box, packaging, and instruction manuals of the KDI Ferralert Solo purchased by Metrasens were "pristine."  (*Id.* at Tr. 81-87.)

Based on the above,[16] the Court finds that there is a jury question as to "whether facts exist so as to justify" Metrasens' unambiguous statement that the KDI Ferralert Solo that was tested by Intertek was manufactured in 2018.  To the extent KDI argues that it is entitled to summary judgment in its favor on this issue because there is no genuine issue of material fact that the KDI Ferralert Solo was a 2012 prototype, the Court rejects this argument.  The dispositive motion deadline in this matter expired over seven months ago, on June 26, 2024.  KDI did not file a Motion for Summary Judgment at that time, and offers no reasonable explanation or argument as to why it should be allowed to do so now. Trial is set to commence in just six weeks, on March 18, 2025.  Allowing KDI to seek summary judgment at this time would unduly delay this already three-and-a-half year-old case, causing undue hardship to Metrasens and a misuse of judicial resources.[17]

Accordingly, and for all the reasons set forth above, the Court finds that the challenged statement in Metrasens' Summary is not ambiguous, but that there is a jury question as to "whether facts exist so as to justify" Metrasens' unambiguous statement that the KDI Ferralert Solo that was tested by Intertek was manufactured and sold by KDI in 2018.  The Court, therefore, cannot find that

---

[16] The Court notes that this finding is based on the record before it at this time.  Of course, if KDI possesses additional documentation or evidence regarding the manufacture date of the Kopp Ferralert Solo that was tested by Intertek, it may introduce such evidence at trial. Moreover, if Metrasens is willing to stipulate that the Kopp Ferralert Solo that was tested by Intertek is a 2012 prototype and was not manufactured in 2018, the parties may so advise the Court in their Trial Briefs.

[17] For similar reasons, the Court rejects KDI's argument that "the statements at issue may also qualify as an 'establishment claim,' which permits a plaintiff to prove literal falsity based on product testing."  (Doc. No. 54 at PageID# 2690.)  KDI did not move for summary judgment on liability based on this argument, nor did it raise (or even allude) to this issue in its Brief in Opposition to Metrasens' Motion for Summary Judgment.  The Court further finds that KDI's reference to this argument goes well beyond the scope of this Court's Supplemental Briefing Order.  Accordingly, the Court will not consider KDI's "establishment claim" argument at this time.

23

the challenged statement is literally false until such time as the jury reaches a determination on that fact issue.

### 2. Deliberate Intent or Bad Faith

As noted above, the parties disagree regarding whether, in addition to literal falsity, a finding of deliberate intent or bad faith is required for the presumption of damages to apply. KDI argues that "[w]hile the combination of literal falsity with bad faith certainly results in a presumption of money damages, and those facts exist in this matter, Sixth Circuit precedent also provides that literal falsity combined with targeted advertising against a main competitor also warrants a presumption of money damages." (Doc. No. 54 at PageID# 2682.) Metrasens disputes that literal falsity in targeted advertising cases is sufficient to establish a presumption of damages and maintains that "governing precedent in the Sixth Circuit permits a presumption of damages only if both literal falsity and deliberate intent/bad faith are shown." (Doc. No. 55 at PageID#s 2695, 2698-2699; Doc. No. 59 at PageID# 2717.)

The Court finds that, in addition to literal falsity, KDI must establish both (1) deliberate intent or bad faith (or "willful deception"); and (2) comparative advertising where the plaintiff's product was specifically targeted. In *Balance Dynamics Corp., supra*, the Sixth Circuit adopted the reasoning of the Eighth Circuit in *Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329 (8th Cir. 1997), which "permitted a presumption of money damages where there existed proof of willful deception" but extended that presumption "only to cases of comparative advertising where the plaintiff's product was specifically targeted." *Balance Dynamics Corp.*, 204 F.3d at 694. The Sixth Circuit later explained that *Balance Dynamics* recognized a "limited exception" to the general rule that a false advertising plaintiff must prove damages. *Innovation Ventures, LLC v. Bhelliom*, 529 Fed. Appx. at

24

566. The court explained that, to qualify for this exception, it must be a comparative advertising case where the plaintiff's product was specifically targeted and the plaintiff must show "willful deception." *Id.*

District courts within this Circuit have interpreted *Balance Dynamics* and *Innovation Ventures v. Bhelliom* as requiring proof of both willful deception and specific targeting for the presumption of damages to apply. *See, e.g., Louisiana-Pacific Corp. v. James Hardie Building Products, Inc.*, 335 F.Supp.3d 1002, 1016 (M.D. Tenn. 2018) ("The Sixth Circuit permits 'a presumption of money damages where there exist[s] proof of willful deception' where the defendant has been specifically targeted.") (quoting *Balance Dynamics Corp.*, 204 F.3d at 694); *ACT, Inc.,* 2020 WL 12574239 at * 33 ("In the Sixth Circuit, damages are presumed when there is proof of willful deception and the claimant's product has been specifically targeted.").

Based on the above, the Court finds that KDI must show deliberate intent/bad faith (or "willful deception") and specific targeting for the presumption to apply. Metrasens does not dispute that this case involves comparative advertising where KDI's product was specifically targeted. Metrasens does, however, argue that the existence of deliberate intent/bad faith constitutes a question of fact that must be submitted to the jury. (Doc. No. 55 at PageID# 2699-2700.)

KDI maintains that "Metrasens demonstrated recklessness amounting to willfulness" when it (1) purchased the Kopp Ferralert Solo product despite knowing that the supplier "had been known in the past to provide old stock;" and then (2) "willfully put out an ad" saying that the KDI product was a "Standard, new, 2018" model "with no support to label it as such." (Doc. No. 54 at PageID#s 2684-2687.) KDI further asserts that willfulness is shown by Metrasens' decision to "keep up the campaign and continue to publish after express notice that the message was literally false." (*Id.*) Lastly, KDI

25

asserts that this Court should determine that Metrasens engaged in "reckless/willful conduct" as a matter of law. (Doc. No. 58 at PageID# 2710, 2712-2714.)

The Court finds that whether or not Metrasens' conduct was deliberate, in bad faith, or "willful" is a question of fact for the jury to decide. *See Ethicon Endo-Surgery, Inc. v. Hologic, Inc*., 689 F.Supp.2d 929, 943 (S.D. Ohio 2010) (in evaluating presumption of damages, noting that "[a] question of fact exists as to whether or not the actions of Hologic were willful.") While KDI cites evidence that Metrasens purchased the KDI Ferralert Solo without verifying the manufacture date and despite knowing that the supplier had provided "old stock" in the past, Mr. Goodyear testified, at length, to the many reasons why Metrasens reasonably believed that the KDI Ferralert Solo it purchased for Intertek's testing was, in fact, KDI's current 2018 model. In light of this conflicting evidence, the Court is not persuaded that it could (or should) determine that Metrasens engaged in "willful deception" when it stated that the Ferralert Solo was a "Standard, new, 2018 FMDS patient screening system." Rather, this is an issue for the jury to decide.

## III.    Conclusion

Accordingly, and for all the reasons set forth above, the Court finds that it cannot determine, as a matter of law, that the challenged statement in the Intertek Summary is literally false, or that Metrasens' conduct amounts to willful deception. These issues will need to be decided by the jury. It follows, then, that the Court cannot determine as a matter of law that KDI is entitled to the

presumption of damages.  The applicability of that presumption will depend upon the jury's findings as to literal falsity and willful deception.

      **IT IS SO ORDERED.**

                              *s/Pamela A. Barker*
                              PAMELA A. BARKER
Date:  February 3, 2025            U. S. DISTRICT JUDGE